IN RE ESTATE OF ANNA ENRIGHT.
PATRICK ENRIGHT ET AL., APPELLANTS, V. FRANCIS ENRIGHT, ADMINISTRATOR, APPELLEE.

271 N. W. 152

FILED JANUARY 25, 1937.   No. 29799.

*Bruce Fullerton,* for appellants.

*Herbert W. Baird, contra.*

Heard before Goss, C. J., Good, Eberly, Day, Paine and Carter, JJ., and Raper, District Judge.

Raper, District Judge.

A document purporting to be the last will of Anna Enright, deceased, was duly offered for probate in the county court of Lancaster county by Francis Enright, a son, the principal beneficiary, as proponent. Objections were filed by Patrick Enright, Catherine Sullivan, John Enright, Martha E. Young and Betty Enright Davis, all of whom are children of deceased. Three grounds of objections were stated: (1) The instrument not executed as required by law; (2) lack of mental capacity of Anna Enright by reason of old age, infirmity and illness; (3) undue influence exerted on her by Francis Enright. The county court admitted the will to probate, from which judgment the contestants appealed. The cause was tried to a jury in district court on the same pleadings. The court directed the jury that the will was executed in all respects as required by law, and submitted to the jury the issue as to mental capacity and undue influence. Verdict was given for proponent sustaining the will.

Mrs. Enright, a widow, died in January, 1935, leaving surviving eight children, all of whom are of full age. In addition to proponent and contestants, the two other children are Mary Ann Walsh, since deceased, and Margaret Shea. Contestants' testimony, in substance, is that the testatrix, at and before the time the will was executed, was in feeble health, 80 years old; her leg and arm were paralyzed, but she was able to walk and "get around," slightly deaf, could not write, but could read, and daily read newspapers; at times slow to respond in conversations; did not seem to understand about her bond transactions with her son Patrick; would sometimes ask that statements

to her be repeated; she had said the children were making it so miserable for her (about Patrick's bonds) that she did not know whether to go on with it or not; had at a former time stated she wanted all her children to share equally; suggestions by Mr. Ledwith and some of the children that she ought to have a guardian; that she did not know what property she owned because her home and lots in Denton were omitted from the will. These features, in the main, are the testimony presented by and upon which contestants base the claim that testatrix was mentally incompetent to execute the will. The proponent's evidence is that testatrix had known Mr. John J. Ledwith (and Mr. Ledwith's father) a great many years, and she had prior to that time frequently consulted with him about business matters, and in June she had called him to her home. At that time they were alone in her home. She told him she wanted him to make her will and gave him the names of her children, and stated the amount she desired they severally should receive, and gave reasons with deliberate consideration for the amounts she was to give each. At that time she indicated that Patrick was to receive nothing; "that he had discount." She mentioned her home in Lincoln, which had been the property of her deceased husband, and said: "Leave that, I don't want that in it. Leave that as it is." Mrs. Enright, testatrix, telephoned Mr. Ledwith on the day the will was executed, July 5, 1934, that she could come to have her will made. He telephoned to Francis asking him to bring his mother. Francis and Mrs. Shea came with her, but both left at once, and Mrs. Enright told Mr. Ledwith the several provisions she wanted in the will, and Mr. Ledwith dictated the will to his stenographer, Gladys Farquar, who transcribed in typewriting, and when it was written, Mr. Ledwith called Mr. Edwin H. Hammond, an attorney whose office was near, and in the presence of the stenographer and Mr. Hammond, Mr. Ledwith questioned the testatrix about her chilren, her early-day recollections of Mr. Ledwith's family, her property, the specific bequests, and other

matters, to all of which she gave intelligent and correct response, and also stated that she did not want to devise her home. She said: "Leave it alone; leave it alone." Mr. Ledwith understood and was justified in concluding that she did not want the home to pass by will, so no residuary clause was made. After the conversation between Mr. Ledwith and testatrix, she signed the will and stated that the instrument was her last will and testament and asked the three to sign as witnesses, which they did in her presence and in the presence of each other. Each of these three persons testified that Mrs. Enright was of sound mind and in possession of full mental faculties. The responses she made to the questions asked her of themselves indicate that she was competent. The will states that her estate consists almost entirely of $9,000 first mortgage bonds plus accrued interest which were a lien on Patrick's farm, and she was willing and had agreed to accept $7,200 in settlement, and because of such discount Patrick should not receive any interest in her estate. She gave Francis $2,500, Mrs. Walsh $500, Margaret Shea $750, John Enright $300, a granddaughter $200, Martha Young $200, Betty Davis $100, Catherine Sullivan $100. She stated to Mr. Ledwith that she gave Betty and Martha the amounts she named because they were addicted to a habit she did not approve of, and gave Catherine only $100 because "she is rich." The testimony further shows that Catherine's husband is a very "well to do" farmer and that the reason for Betty's and Catherine's small legacies were well founded. There was a bequest of $200 to the pastor of her church. Taken as a whole, the evidence is overwhelming, if not, indeed, conclusive, that she was competent to execute the will.

Much of the evidence concerns the $9,000 mortgage bonds on Patrick's farm and it is about these that the claim of undue influence arises. Patrick and Francis had each bought a farm from their father's estate. Patrick gave a mortgage to a loan company for about $14,000, and a second mortgage to his sister Catherine for $2,500. His mother purchased $9,000 of those bonds in 1926, and Pat-

rick did not know of her owning them until 1929. He was unable to pay interest for three years and the mortgage company began foreclosure. Patrick applied for a loan to a federal loan agency, but was unable to procure a new loan for enough to pay the mortgages that were due. He asked his mother, probably some time in 1933 or early part of 1934, to make a reduction of her bonds to $7,200 which would reduce his indebtedness in an amount sufficient to enable him to procure a new loan and stop the foreclosure proceeding. His mother refused the offer and he said he told her she could have the farm if she would pay the indebtedness. She said she would rather have the money. She talked at various times with all the children, except possibly Francis and Patrick. The children at first were opposed to the settlement and later it seemed they thought that if she accepted Patrick should sign a waiver of his right in the mother's estate. Patrick refused, and the matter was held in abeyance for a period of several months, during which time she consulted Mr. Ledwith about it. She did accept the offer, but it is not definitely shown just when her acceptance was made. The daughter Catherine testified that she talked with her mother about it, and that was about six weeks before her mother went to the country. That probably was about the time Mr. Ledwith was called to the home of testatrix and talked to her about the will. At that conversation Mrs. Enright asked Catherine to go to Patrick and tell him she would accept the $7,200 settlement and she did not want any hard feelings between Patrick and Francis after she was gone, and Catherine delivered the messages as requested. Catherine released her second mortgage without payment so that Patrick could save his farm. There is much evidence as to the negotiations and the conversations about the bonds, but it was only after long deliberation that Mrs. Enright agreed to accept Patrick's offer. The inference may fairly be drawn that some of the children felt that the difference between the full amount of the bonds and the accepted offer should bar Patrick from further inheritance so that their shares

would to that extent be enhanced, and suggested that to their mother. Betty Davis testified that she thought she and all the other children exercised undue influence over her mother to leave Patrick nothing, and that she now felt it was wrong. The testimony of any acts of Francis in regard to the transaction is very meager. There is testimony that once he said that Patrick should check in or check out. Betty Davis testified that he was present when it was talked about Patrick relinquishing his share. Francis denies that. The evidence does not disclose any acts, outside of the last-mentioned incident wherein he advised or consulted with his mother about the bonds, or about Patrick's right to share in the estate. It may further be said that the evidence does not disclose that undue influence was exerted by any of the children. The objector, Betty Davis, has placed herself in an anomalous position, claiming that she exercised undue influence on her mother and now seeks to benefit from her wrongful acts.

The bond transaction was completed some time after the will was executed, and after Mrs. Enright left her home and went to Francis' home, which was July 19, 1934; the $9,000 in bonds were surrendered and $7,200 in government bonds received by testatrix. The conversations, statements, suggestions and conferences between the children and their mother fall far short of proving undue influence of Francis or of any other person in procuring the will. The evidence shows that the lots in Denton were of no value.

The contestants allege error in the court giving instructions which placed the burden on contestants to prove by a preponderance of the evidence that the will was the result of undue influence exerted upon testatrix by Francis Enright. The objection is that the instructions limited all the evidence except what related to Francis, and contestants assert that the jury should have been instructed that they might find that undue influence of others induced the will. That undue influence may be exercised by a person other than a beneficiary under certain circumstances may

be conceded, but in view of contestants' pleading and the evidence, it cannot apply in this case.

One of the objections filed by contestants is as follows: "That said instrument was executed by the said Anna Enright, deceased, by reason of improper and undue influence exercised and exerted upon her by Francis Enright, her son, who is a legatee and chief beneficiary thereunder and said instrument is, not the last will and testament of Anna Enright, deceased, but of the said Francis Enright." The contestants having thus pleaded, the court properly instructed the jury, upon that issue, that the burden was upon the contestants to prove that the will was procured by the undue influence of Francis.

Complaint is made of instruction No. 6, in which the court directed the jury that they take into consideration certain acts of the testatrix in considering her mental competency. The things set forth are a fair reflection of the evidence, and did not prejudice the contestants.

Contestants assert that instruction No. 9 is erroneous. That instruction told the jury that as a matter of law Mrs. Enright was not bound either in law or morals to scale down or reduce Patrick's indebtedness to her because of the fall in value of the real estate security. She was under no obligation to bear the loss. Under the circumstances shown by the evidence, this instruction was proper.

Another assigned error is that there was testimony by John Enright that Mrs. Enright on June 18, 1934, told Mr. Ledwith that she wanted the children treated alike. Mr. Ledwith did not deny this catagorically, but his testimony of his visit about that time refutes it. The testimony of John is not very clear.

Contestants offered an instruction which was refused, to the effect that, if testatrix, before the will was executed, had expressed a fixed intention to dispose of her property at variance with the will, the jury might consider that in determining her mental soundness. The mere omission of that feature of the testimony was not prejudicial and the court did not err in refusing the instruction.

A careful consideration of all the evidence shows that the testatrix was competent and that no undue influence was exerted by Francis or any one else. The trial court would have been justified in directing a verdict for proponent.

The judgment of the district court is

AFFIRMED.